UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION;<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION,<br><br>       Plaintiffs,<br><br>       v.<br><br>DEPARTMENT OF DEFENSE; CENTRAL<br>INTELLIGENCE AGENCY; DEPARTMENT OF<br>STATE; DEPARTMENT OF JUSTICE,<br><br>       Defendants. | **COMPLAINT FOR<br>INJUNCTIVE RELIEF**<br><br>Civil Action No.<br><br>ECF Case |

## COMPLAINT FOR INJUNCTIVE RELIEF

### Preliminary Statement

1.    In this Freedom of Information Act ("FOIA") case, plaintiffs challenge the government's refusal to promptly release documents about its notorious Bagram prison in Afghanistan, where hundreds of people have been held indefinitely in harsh conditions, without access to lawyers, courts, or a meaningful process to challenge their detention.   Although the U.S. government's actions at Bagram -- and its detention policies more generally -- are the subject of widespread public attention, concern, and debate, the details have been shrouded in near-complete secrecy.

2.    Five months have elapsed since the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively "ACLU") filed FOIA requests (the "Request" or "Requests") seeking records about the detention and treatment of prisoners at Bagram from defendants Department of Defense ("DOD"), Central Intelligence Agency ("CIA"), Department of State ("DOS"), and Department of Justice ("DOJ").  None of the

agencies, however, has released any responsive records. Defendant CIA has refused to confirm or deny the existence of responsive records. Defendant DOD has denied plaintiffs' request for expedited processing and has refused to disclose a document that lists each Bagram detainee's name, citizenship, length of detention, and place of capture. Defendants DOS and DOJ have granted plaintiffs' request for expedited processing but have not yet released any responsive records or provided a substantive response to the Requests. Each defendant has either denied or not yet reached a final determination on plaintiffs' request for a waiver or limitation of processing fees.

3.      The records plaintiffs seek are urgently needed to inform the public about the U.S. government's actions at the Bagram detention facility and to inform the national debate about terrorism-related detention policy. Plaintiffs are entitled to expedited processing of their Requests and the prompt release of responsive records. Plaintiffs are also entitled to a waiver of processing fees because the release of the requested records is in the public interest, and to a limitation of processing fees because the ACLU is a "news media" requestor.

4.      Plaintiffs seek an injunction requiring defendant agencies to immediately process plaintiffs' Requests and to release records that have been unlawfully withheld. Plaintiffs also seek an order enjoining defendants from assessing fees for the processing of the Requests.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§701-706. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

6.      Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan 501(c)(4) organization with over 500,000 members dedicated to the constitutional principles of free speech, liberty, and equality.  The American Civil Liberties Union is committed to ensuring that the detention and treatment of prisoners within U.S. custody is consistent with the government's obligations under domestic and international law.

7.      The American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties.

8.      Defendant Department of Defense is a Department of the Executive Branch of the U.S. government.  The DOD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

9.      Defendant Central Intelligence Agency is a Department of the Executive Branch of the U.S. government.  The CIA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10.     Defendant Department of State is a Department of the Executive Branch of the U.S. government.  The DOS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

11.     Defendant Department of Justice is a Department of the Executive Branch of the U.S. government.  The DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**Factual Background**

12.     The nation is embroiled in an intense public debate about U.S. policy pertaining to the detention and treatment of suspected terrorists and individuals designated as unlawful enemy combatants.  Although much public attention has focused on the U.S. prison at Guantánamo Bay, Cuba, the Bagram detention facility in Afghanistan – where the U.S. government has detained an unknown number of prisoners since 2002 – is also central to this debate.

3

13.     In fact, the U.S. government is reportedly detaining many more individuals at Bagram than at Guantánamo.   Whereas approximately 200 individuals are currently imprisoned at Guantánamo, over 600 people are reportedly imprisoned at Bagram.  Like prisoners at Guantánamo, some prisoners at Bagram have been imprisoned for more than six years without charge.  And like Guantánamo prisoners, many prisoners at Bagram were captured far from Afghanistan or outside any battlefield.

14.     However, Bagram prisoners, unlike Guantánamo prisoners, have no access to lawyers and no access to a judicial forum in which to challenge their prolonged and indefinite detention.  For years, Bagram prisoners have received an even less robust and meaningful process for administratively challenging their detention than the process afforded Guantánamo prisoners – a process the Supreme Court declared unconstitutional last year.  On September 14, 2009, the Obama administration released guidelines that mandate a new administrative process for determining whether people should be imprisoned indefinitely at Bagram.  According to news reports, the new process will go into effect at the end of September 2009.

15.     Conditions of confinement at Bagram are reportedly primitive and marked by abuse.  A number of prisoners have died in U.S. custody at Bagram; Army investigators concluded that at least two of those deaths were homicides.

16.     The U.S. government's detention and treatment of prisoners at Bagram has been the subject of widespread media interest and public concern for many years. *See, e.g.,* Eric Schmitt, *Afghan Prison Poses Problem in Overhaul of Detainee Policy*, N.Y. Times, Jan. 26, 2009; '*How Bagram Destroyed Me'*, BBC News, Sept. 25, 2008; Fisnik Abrashi, *U.S. Allows First Family Visits to Afghan Prison*, Assoc. Press, Sept. 23, 2008; Del Quentin Wilber, *In Courts, Afghanistan Air Base May Become Next Guantánamo*, Wash. Post, June 29, 2008; Anand Gopal, *Investigation: In Afghanistan, Routine Abuse of Terror Detainees*, Christian

4

Science Monitor, June 17, 2008; Eric Schmitt and Tim Golden, *U.S. Planning Big New Prison in Afghanistan*, N.Y. Times, May 17, 2008; Fisnik Abrashi, *Red Cross Faults Afghan Prison*, Assoc. Press, Apr. 15, 2008; Carlotta Gall, *Video Link Plucks Afghan Detainees From Black Hole of Isolation*, N.Y. Times, Apr. 13, 2008; Candace Rondeaux, Josh White, and Julie Tate, *Afghan Detainees Sent Home to Face Closed-Door Trials*, Wash. Post, Apr. 13, 2008; Andrew Gumbel, *Bagram Detention Centre Now Twice the Size of Guantánamo*, The Indep., Jan. 8, 2008; Tim Golden, *Foiling U.S. Plan, Prison Expands in Afghanistan*, N.Y. Times, Jan. 7, 2008; Matthew Pennington, *Inmates Detail U.S. Prison Near Kabul*, Assoc. Press, Oct. 1, 2006; Eliza Griswold, *American Gulag: Prisoners' Tales from the War on Terror*, Harpers, Sept. 1, 2006; Carlotta Gall and Ruhullah Khapalwak, *Some Afghans Freed from Bagram Cite Harsh Conditions*, N.Y. Times, June 8, 2006; Tim Golden and Eric Schmitt, *A Growing Afghan Prison Rivals Bleak Guantánamo*, N.Y. Times, Feb. 26, 2006; Tim Golden, *Years After 2 Afghans Died, Abuse Case Falters*, N.Y. Times, Feb. 13, 2006; Tim Golden, *Abuse Cases Open Command Issues at Army Prison*, N.Y. Times, Aug. 8, 2005; Tim Golden, *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. Times, May 20, 2005; Emily Bazelon, *From Bagram to Abu Ghraib*, Mother Jones, Mar./Apr. 2005.

17.    Despite this widespread public concern, however, Bagram remains overwhelmingly shrouded in secrecy. News reports over the years have contained little detail about what is happening at Bagram and the public lacks basic facts about the facility. *See, e.g.*, Ian Pannell, Video, *Ex-Detainees Allege Bagram Abuse*, BBC News, June 24, 2009 ("This is Bagram. We can only show you the runway. The detention camp is kept secret."); R. Jeffrey Smith, *Obama Follows Bush Policy on Detainee Access to Courts*, Wash. Post, Apr. 11, 2009 ("The government has not said publicly how many of the approximately 600 people detained [at Bagram] are non-Afghans . . . ."); Charlie Savage, *Judge Rules Some Prisoners at Bagram Have*

5

*Right of Habeas Corpus*, N.Y. Times, Apr. 2, 2009 ("United States officials have never provided a full accounting of the [Bagram] prison population."); Tim Golden & Eric Schmitt, *A Growing Afghan Prison Rivals Bleak Guantánamo*, N.Y. Times, Feb. 26, 2006 ("Bagram has operated in rigorous secrecy since it opened in 2002.").

18.    The public, for example, remains unaware of who is detained at Bagram; their nationalities; how long they have been imprisoned; and the basic circumstances of their capture, including whether they were captured on or off a battlefield, in Afghanistan, or in a foreign country and "rendered" to Bagram.

19.    The public similarly has little knowledge of the policies, procedures, and standards that have governed Bagram detentions since the United States first began detaining prisoners there in 2002. Although the Obama administration recently released new guidelines that will govern Bagram detention determinations, records concerning the standards and processes previously employed and records pertaining to the prior status review proceedings themselves remain largely secret. Also, records about the development and implementation of the new guidelines have not yet been released. The public, moreover, still lacks basic facts about the policies and procedures that govern the release of Bagram prisoners or their transfer to Afghan custody or other countries.

20.    Public concern about and media interest in Bagram has intensified in recent months, but publicly-available facts remain sparse. Heightened concern about Bagram has resulted in part from growing speculation about whether President Obama will depart from the prior administration's detention policies and, if so, how. In July 2009, a Pentagon report recommending significant changes to detention policy in Afghanistan garnered widespread media attention. *See, e.g., U.S. Report Urges Changes in Afghan Detainee Policy*, Reuters, July 20, 2009; Eric Schmitt, *Pentagon Seeks to Overhaul Prisons in Afghanistan*, N.Y. Times, July

19, 2009. Just last week, the Obama administration's release of new review procedures for Bagram detainees also garnered widespread media attention. *See, e.g.*, Editorial, *Back to Bagram*, N.Y. Times, Sept. 20, 2009; Editorial, *Rethinking Bagram*, Wash. Post, Sept. 17, 2009; Karen DeYoung and Peter Finn, *U.S. Gives New Rights to Afghan Prisoners*, Wash. Post, Sept. 13, 2009; Eric Schmitt, *U.S. to Expand Detainee Review in Afghan Prison*, N.Y. Times, Sept. 12, 2009.

21.    Recent reports about the wrongful imprisonment of particular Bagram prisoners and about the mistreatment of Bagram prisoners generally has heightened public attention to and concern about the facility. *See, e.g.*, Jonathan Horowitz, *Former Bagram Detainee Describes "Completely Wild" Arrest, Interrogation by US Troops*, The Huffington Post, July 28, 2009; Heidi Vogt, *US Detainees Hold Protest at Bagram Jail*, Assoc. Press, July 16, 2009; Richard A. Oppel, Jr., *U.S. Captain Hears Pleas for Afghan Detainee*, N.Y. Times, May 24, 2009.

22.    Public interest in Bagram has also grown as a result of a recent judicial ruling – and the Obama administration's appeal of that ruling – concerning Bagram prisoners' ability to challenge their detentions in U.S. courts. *See, e.g.*, *Obama Administration: Guantanamo Detainees Have More Rights than Bagram Detainees, Who Have None*, ABC News, Sept. 15, 2009; *Obama to Appeal Detainee Ruling*, N.Y. Times, Apr. 10, 2009; Charlie Savage, *Judge Rules Some Prisoners at Bagram Have Right of Habeas Corpus*, N.Y. Times, Apr. 3, 2009; David G. Savage, *Some Prisoners at Bagram Air Base Can Challenge Detentions, Judge Rules*, L.A. Times, Apr. 3, 2009.

23.    Because of the excessive secrecy surrounding Bagram and growing concern that the U.S. may be acting unlawfully and/or unwisely there, international bodies, foreign officials, and policy-makers have increasingly voiced criticism of U.S. actions at Bagram in recent months. *See, e.g.*, *Afghan Presidential Contender Vows Closure of Bagram Prison*, Fars News

Agency, Aug. 10, 2009; Jonathon Burch, *U.N. Envoy Concerned at Afghanistan Jail Conditions*, Reuters, Aug. 2, 2009; Robert H. Reid and Kathy Gannon, *Karzai: Afghans Want Rules for Troops Changed*, Assoc. Press, July 27, 2009.

       24.     In short, there is significant and increasing public concern that the Bagram has become, in effect, the new Guantánamo. *See* Jake Tapper, *Will Bagram Be President Obama's Guantánamo*, ABC News, Aug. 18, 2009; Ari Shapiro, *Is the Bagram Airbase the New Guantánamo?*, Nat'l Pub. Radio, Aug. 13, 2009; Tom Curry, *Bagram: Is it Obama's New Guantánamo?*, MSNBC.com, June 3, 2009; Editorial, *The Next Guantánamo*, N.Y. Times, Apr. 12, 2009; *see also* Eric Schmitt, *U.S. to Expand Detainee Review in Afghan Prison*, N.Y. Times, Sept. 12, 2009 ("Officials say the importance of Bagram as a holding site for terrorism suspects captured outside Afghanistan and Iraq has risen under the Obama administration, which barred the Central Intelligence Agency from using its secret prisons for long-term detention and ordered the military prison at Guantánamo closed within a year.").

### The FOIA Requests

### The Requested Records

       25.     On April 23, 2009, the ACLU filed FOIA requests with the DOD, CIA, DOS, and DOJ seeking the release of records pertaining to the detention and treatment of prisoners held at Bagram. Plaintiffs' Requests sought records pertaining to: (1) the number, names, citizenship, and date and place of capture of individuals currently detained at Bagram; (2) the rendition or transfer of individuals captured outside Afghanistan to Bagram; (3) the policies, procedures, and standards that govern detentions at Bagram and the release or transfer to prisoners to Afghan custody; (4) the process for determining and reviewing Bagram prisoners' status; and (5) agreements between the Afghan and United States governments regarding operations at Bagram; and (6) the treatment of and conditions of confinement for Bagram prisoners.

<u>Request for Expedited Processing</u>

26.    Plaintiffs sought expedited processing of the Requests on the grounds that the records are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public about actual or alleged Federal government activity" and because the records sought also relate to a "breaking news story of general public interest."

27.    The records plaintiffs seek relate to a breaking news story and are urgently needed to inform the public about the U.S. government's detention and treatment practices at Bagram and about the U.S. government's detention and treatment of suspected terrorists more generally.

28.    The ACLU is "primarily engaged in disseminating information" to the public under the FOIA.  Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public is a critical and substantial component of the ACLU's work and one of its primary activities.  The ACLU's regular means of distributing and publicizing information, such as information obtained through FOIA requests, include: a paper newsletter distributed to approximately 450,000 people; a bi-weekly electronic newsletter distributed to approximately 300,000 subscribers; published reports, books, pamphlets, and fact sheets; a widely-read blog; a heavily-visited website, including searchable databases of documents obtained through FOIA requests and documents interpreting and commenting on FOIA documents; and a television series on civil liberties issues.

29.    The ACLU routinely disseminates information about U.S. detention policies and practices.  The ACLU has played a leading role in disseminating information about U.S. detention policies and practices in Iraq, Guantánamo, Afghanistan, and elsewhere.  The release of documents in response to an ACLU FOIA pertaining to the torture and abuse of detainees in U.S. custody has been the subject of hundreds of news articles and has

9

played a major role in informing the public about the topic. The ACLU, with Columbia University Press, has published a book about the documents it obtained through this FOIA request; has disseminated reports and analyses of the documents; and has created a searchable database of the documents.

### Request for a Public Interest Fee Waiver

30.     Plaintiffs sought a waiver of fees on the ground that disclosure of the requested records is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government."

31.     Disclosure of the requested records will contribute significantly to the public's understanding of U.S. detention operations at Bagram and its broader detention policies.

32.     Disclosure is not in the ACLU's commercial interest. The ACLU summarizes, explains, and disseminates information it gathers through the FOIA at no cost to the public.

### Request for a Limitation of Fees Based on News Media Requestor Status

33.     Plaintiffs sought a limitation of fees on the ground that the ACLU qualifies as a "news media" requestor.

34.     The ACLU is a "news media" requestor for the purposes of the FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. The ACLU publishes electronic and paper newsletters, news briefs, reports, books, fact sheets, pamphlets, and other educational and informational materials. The ACLU also maintains an extensive website and a heavily-trafficked blog. Through these and other channels, the ACLU routinely summarizes, explains, and disseminates information obtained through the FOIA. The ACLU provides all of this information at no cost to the public.

### Agency Responses

35.    None of the defendants has disclosed any records responsive to the Requests.

36.    Defendants are improperly withholding the records sought by plaintiffs' Requests.

### Department of Defense

37.    By letter dated May 6, 2009, defendant DOD denied plaintiffs' request for expedited processing on the grounds that the topic of the Requests had already received "broad and sustained media coverage" and thus was not "a breaking news story." The DOD also concluded that the requested records were not "urgently needed" because "the information [would not] lose its value if not processed on an expedited basis." The DOD also denied plaintiffs' request for a fee limitation based on its status as a news media requestor on the grounds that the ACLU did not "publish[ ] or disseminat[e] information as its primary activity."

38.    By letter dated June 12, 2009, plaintiffs timely appealed the DOD's denial of expedited processing and news media requestor status.

39.    By letter dated July 14, 2009, defendant DOD denied the appeal, upholding its determination to deny the ACLU's request for expedited processing and a news media requestor fee limitation.

40.    By letter dated July 29, 2009, DOD informed the ACLU that the National Detainee Reporting Center ("NDRC") had located a record responsive to the Request but that it was withholding that record in its entirety. Specifically, the NDRC located a 12-page classified report, or list, that contains "the names, citizenship, capture date, days detained, capture location and circumstances of capture" concerning individuals detained at Bagram as of June 22, 2009. According to the letter, the DOD determined that the report was exempt from release pursuant to: (1) FOIA Exemption 1 because it "pertains to information that is properly classified" as protected "military plans, weapons, or operations" and "intelligence activities, and intelligence

11

sources and methods"; (2) FOIA Exemption 6 because its release would constitute a clearly

unwarranted invasion of personal privacy; and (3) FOIA exemption 7(C) because it is a record

compiled for law enforcement purposes and its release could reasonably be expected to

constitute an unwarranted invasion of privacy.  No further explanation for the invocation of these

specific FOIA exemptions was provided.

     41.    By letter dated August 13, 2009, the ACLU timely appealed the withholding of

the NDRC document.  The statutory deadline for deciding the appeal has passed, but the DOD

has not acted on the appeal.

     42.    The DOD has not yet made any determination on the ACLU's request for a public

interest fee waiver.

Central Intelligence Agency

     43.    By letter dated May 13, 2009, defendant CIA refused to confirm or deny "the

existence or nonexistence of records responsive to [plaintiffs'] request."  Invoking FOIA

Exemptions (b)(1) and (b)(3), the CIA stated that the "fact of existence or nonexistence of

requested records is currently and properly classified and is intelligence sources and methods

information that is protected from disclosure by [statute]."  Beyond this conclusory statement,

the CIA provided no further explanation for its blanket "Glomar" response.

     44.    Plaintiffs timely appealed the CIA's determination by letter dated June 23, 2009.

The statutory deadline for deciding the appeal has passed, but the CIA has not acted on the

appeal.

Department of State

     45.    By undated letter received by plaintiffs on June 9, 2009, defendant DOS granted

plaintiffs' request for expedited processing but has not, to date, produced any responsive records.

12

46.     By the same letter, DOS denied plaintiffs' request for a public interest fee waiver and asked for further information justifying plaintiffs' request to be placed in the "news media" requestor fee category.

47.     By letter dated June 15, 2009 plaintiffs provided DOS with further information to support its request for a news media requestor fee limitation.  Plaintiffs have not received any response to this letter.

48.     By letter dated June 30, 2009, plaintiffs timely appealed DOS' denial of its request for a public interest fee waiver.

49.     The statutory deadline for deciding the appeal has passed, but DOS has not acted on the appeal.

### Department of Justice

50.     By letter dated May 4, 2009, defendant DOJ informed plaintiffs that it was referring the Request to the National Security Division, a component of DOJ.

51.     By letter dated May 15, 2009, the National Security Division granted plaintiffs' request for expedited processing based on plaintiffs' showing that "there is a particular urgency to inform the public about an actual or alleged federal government activity."  The DOJ, however, has not, to date, produced any responsive records.

52.     The DOJ has not yet made a determination on the ACLU's request for a fee limitation or waiver.

### **Causes of Action**

53.     Defendants' failure to timely respond to plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and defendants' corresponding regulations.

54.     Defendants' failure to make promptly available the records sought by

plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and defendants' corresponding regulations.

55.    The DOD's failure to grant plaintiffs' requests for expedited processing and DOJ's and DOS' failure to in fact expedite processing violates the FOIA, 5 U.S.C. § 552(a)(6)(E), and defendants' corresponding regulations.

56.    Defendants' failure to make a reasonable effort to search for records responsive to the plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and defendants' corresponding regulations.

57.    The DOD's wrongful withholding of specific responsive records and the CIA's refusal to confirm or deny the existence of responsive records violates the FOIA, 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A), and defendants' corresponding regulations.

58.    The DOS' failure to grant plaintiffs' request for a public interest fee waiver violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and defendants' corresponding regulations.

59.    The DOD's failure to grant plaintiffs' request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and defendants' corresponding regulations.

## Requested Relief

WHEREFORE, plaintiffs respectfully request that this Court:

1. Order defendants immediately to process all requested records;

2. Order defendants to conduct a thorough search for all responsive records;

3. Order defendants to promptly disclose the requested records in their entirety, and make copies available to plaintiffs;

4. Enjoin defendants from charging plaintiffs fees for the processing of their Requests;

5. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

6. Grant such other relief as the Court may deem just and proper.

14

Respectfully submitted,

MELISSA GOODMAN (MG-7844)
JONATHAN HAFETZ (JH-0843)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-549-2500
Fax: 212-549-2629

CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENGBERG (AE-2012)
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, New York 10004

September 22, 2009

15